Parker, J.
The action below was brought by the defendant in error against the plaintiffs in error on account of alleged negligence on the part of the plaintiffs in error with respect to certain machinery furnished by the , plaintiffs in error, as master, to the defendant in error as their servant and employe, upon and with which he was required to perform certain work. The petition sets forth that the defendants — ■ the plaintiffs in error here, during the. time referred to in the petition, “owned and operated a large amount of dangerous and hazardous machinery, and ”h'ad in their’ employment a large number of workmen, among and one of whom was this plaintiff, in their said manufactory, engaged in running and operating said machinery for the profit and benefit of said defendants;’’ that during that time Frank J. Lehman was the foreman of^ the defendants below; “that *630 among the machinery by said defendants, placed in their • manufactory, and used and employed by them in their said business, was a certain machine commonly designated as a double surface, which was used'for the purpose of planing at one and the same time both the upper and under surfaces of lumber or boards in the course of manufacture in their said manufactory. That in and as a part of said machine were certain revolving cylinders, rollers, cogs, and knives through and between which boards or lumber were run ' in planing or smoothing off the surfaces of the same, and which required the attention of two workmen, one in the feeding or running the lumber into said machine between said cylinders, rollers, cogs, and knives, and the other at the other end of the machine to take away said lumber or boards after they had passed through said machine. That on the dtth day of October, 1893, and for some three or four weeks prior thereto, this plaintiff had been directed and required by the said foreman to work, and he had worked, at said machine for the purpose of feeding or running said lumber into said machine' and between said cylinders, rollers, cogs, and knives. ” The petition sets forth that this machinery would become clogged from time to time by an accumulation of shavings in the cogs and meshes which operated these rollers, and that it became the duty- of the plaintiff below, when this occurred, to clean out these cogs and meshes so that the machine might operate properly; that he hád been directed to so clean the machine by the-foreman of the defendants below. It further says that machines of this kind . are usually so constructed “that when they are in proper repair and suitable condition to be run and operated, that a lever under the control of the workman feeding the said machine when thrown to a certain designated point, would stop the revolutions of said rollers and cogs, and enable the workmen to remove said shavings without receiving and injury.” He says that the lever and *631 attachments upon this machine were out of order, so that when the lever was moved to a point where the result would be that it would stop the movement of these rollers, that it wouldn’t always have that effect, but they would continue to revolve, and that that was the defect in this machine, and that it therefore made it highly dangerous to one operating the machine in the performance of the duty of cleaning out these cogs and meshes. But plaintiff proceeds to say in his petition:
“That plaintiff notified the said'foreman of said defective condition of said machine, and the said foreman promised plaintiff to repair the same and correct the said defect. That the said foreman did undertake .to repair the said machine, and represented to plaintiff that he had repaired and adjusted the same so as to wholly remedy the said defect in the same, and that said rollers and cogs would thereafter stop and wholly cease their revolutions when said lever was thrown to said designated point, and ordered plaintiff to again resume work on said machine, and to run and operate the same m the manner above set forth. But plaintiff says that said foreman had not, in fact,properly repaired said machine, but that the said machine was then, and thereafter remained, in the defective condition herein before described, until plaintiff received the injury herein complained of; all of which was well known to said defendants, and was unknown to said plaintiff.”
Then follows an allegation which was inserted in this second amended petition after the verdict, and by leave of court, and the giving of this leave is "one of the alleged errors which is said to be prejudicial to the plaintiffs in error. The allegation is as follows: “And plaintiff further Says that he did not have equal means of knowing of said defect with the said defendants.” Then follow the allegations that were originally in the amended petition, before ■ the trial began:
“That the said foreman carelessly, wrongfully, and negligently continued to use the said machine in its said defec *632 tive condition, and required the said plaintiff to work at and operate the same, and thereby exposed him to the danger of losing his hand by reason of the said defective condition of said machine. Plaintiff further says, that relying upon the said representations of said foreman, and believing that the said machine had been properly repaired, and that the said lever when properly set would hold the said cylinders and rollers stationary whenever it became necessary to remove the shavings therefrom, he again commenced work upon said machine, and continued to work in the position and in the way and manner in which he had been directed and required to work thereon by said foreman, until some time in the forenoon of the said 4th day of October, 1893, when it became necessary to stop the revolutions of said cylinders and rollers for the purpose of safely removing the said shavings. That the said plaintiff for the purpose threw the said lever to the said designated point where it should have held the said rollers stationary as aforesaid. That thereupon the said rollers and cogs ceased to revolve, and plaintiff, believing that the same were so stopped by the operation of said lever, sought to remove the said shavings in the usual and customary manner with a stick held in his hand; that he had so removed a portion of the shavings, and was damaged in removing the balance thereof, when, by reason of the defective condition of said machine as hereinbefore described, said rollers and cogs suddenly commenced to revolve, and by reason of the negligence of said defendants and said foreman in neglecting to properly repair the said machine and to inform plaintiff that it had not been repaired, and was in the same defective and dangerous condition that it had been theretofore, and by reason of the negligence of said defendants and said foreman in continuing to úse the said machine in its said defective and dangerous condition, and without any fault on the pa.rt of the ylainliff, plaintiff’s left hand was drawn into said cogs, his fingers torn from their sockets, and his hand crushed in such a manner that it became necessary to amputate a large part of it. Plaintiff says that he sustained the said injuries entirely by reason of the negligence of the said defendants and said foreman in failing to properly repair the said machine, in failing to notify *633 plaintiff of the danger to which he was exposed, in continu-. ing to use the same in its said defective condition, and without any fault on his part.”
On account of these injuries the plaintiff asks damages in the sum of $20,000.
An answer was filed denying these- allegations of negli-. gence — -denying in fact that the machine was out of repair; that the foreman had been notified of the defects or want of repair of the machine; that he had promised to fix it; and, in fact, all of the material allegations of negligence upon which the plaintiff below based his right to recover. It also alleges that the plaintiff was guilty of contributory negligence in the premises.
The case proceeded to trial, and resulted in a verdict in favor of the plaintiff below for $2000, I believe. A motion for a new trial was made, and overruled, . and judgment entered upon the verdict.
A fair epitome of the plaintiff’s case, omitting all verbiage, is contained in the brief of counsel for plaintiff in error, which reads as follows:
“That the plaintiffs in error had a defective machine; that the defendant in error worked with the machine three or four, weeks; that he then knew of its defect and notified the foreman of the plaintiffs in error of its defects; that the defendnat in error after this notice ceased to work the machine; that the foreman promised to repair it, and represented to defendant in error that he. had repaired it, and defendant in error, relying upon this representation, again resumed work with the machine; that it had not been repaired as represented by the foreman; that it still remained in the same defective condition, and by reason thereof defendant in error was injured.”
In addition to that, the amended petition fairly states that after the foreman had represented that the machine had been repaired, the plaintiff below not, only relied upon this statement, but he had no knowledge then of the defect *634 in the machine; and the amended petition also contains the averment that the accident and injury resulting were without any fault on his part.
• The first question we shall consider is: Did the court err in permitting the amendment of the second amended petition after verdict? It appears from the bill of exceptions that after the plaintiff below had rested his case in chief, the defendants, by their counsel, moved the court to direct the jury to return a verdict for the defendants, on the ground that the petition did not state a cause of action This motion was overruled, and the defendants excepted, and went into their defense. The defect in the petition which was then and is now insisted upon, was the omission of'this averment: “And plaintiff further says, that he did not have equal means of knowing of said defect with the said foreman.’’ It appears, as I have said, that after the case had been submitted to the jury and the verdict returned, and before the motion for a new trial came on to be heard, hut after it had been filed, the plaintiff below, by his counsel, asked leave of the court to amend the petition by inserting this averment, and leave was given, and the amendment accordingly inserted.
; Assuming that this was a material averment, was the plaintiff in error prejudiced upon the trial by its omission? It appears from the bill of exceptions that evidence was received upon the issue which appears to be made by this averment, the same as if that issue had been made in the written pleadings; that the plaintiff in error was not prevented from producing evidence on that point, unless on the.cross-examination of the plaintiff, where he was denied the privilege of enforcing answers to certain questions appearing on page 16 of the bill of exceptions, which I will discuss further on. And this issue was submitted to the jury by the court. At page 71 of the bill of exceptions, in his charge, the court said to the jury:
*635 “It must be shown that the machine was in a defective condition; that the defect caused-the injury; that the defective condition of the machine was due to negligence upon the part of the defendants; and further, that the plaintiff did not know of the defect, and had not equal means of knowing it with the defendants.” . •
Again at page 72 — ■
“When, as in this case, it is alleged that a servant has received an injury from a defect in a machine which he was using, in order to charge the master with responsibility for the injury, it must appear, first, that the machine was defective; second, that the master had knowledge or notice of the defect, or that the defect was of such a character, or had existed for such a length of time that in the exercise of reasonable care the master ought to have known of it; and third, that the servant did not know of_the defect, and had not equal means of knowing it with the master.”
In view of the fact that it appears from the bill of exceptions that the case was tried and submitted to the jury by the court, under proper instructions, precisely as if this issue had been made in the written pleadings, we are of the opinion that it was not an abuse of power or discretion upon the part of the judge of the court of common pleas to allow this amendment after verdict, and that he was authorized to do so by sec. 5114 R. S., which reads as follows:
“The court may, before or after judgment, in furtherance of justice, and on such terms as may be proper, amend any pleading, process, or proceeding, by adding or striking out the name of any party, or by correcting a mistake in the name of a party, or a mistake in any other respect, or by inserting other allegations material to the case, or, when amendment does not change substantially the claim or defense, by conforming the pleading or proceeding to the facts proved; and when an action or proceeding fails to conform to the provisions of this title, the court may permit the same to be made conformable thereto, by amendment.”
The supreme court of the state has passed upon this *636 section and the section following — 5115—-and other cognate provisions of the statutes, several times; and it appears that in the interpretation of these provisions the court has authorized great liberality in the interest of justice in the amendment of pleadings. I read a paragraph from the case of Benninger v. Hess, which is reported in 41 Ohio St., 64, reading from pages 69 and 70: The case is not precisely in point, but it illustrates the views of the court as to the interpretation that ought to be given to this statute:
“As provided by section 4114 of the Revised Statutes, ‘The court may,before or after judgment, in furtherance of justice, and on such terms as may be proper, amend any pleading, process, or proceeding * * * by inserting other allegations material to the case, or, when amendment does not change substantially the claim or defense, by conforming the pleading or proceeding to the facts proved. ’ And by section 5115, of the Revised Statutes, ‘The court, in every stage of an action, must disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party; and no judgment shall be. reversed, or affected, by reason of such error or defect. ’
“These provisions are founded upon the principles of an enlightened justice. In Hoffman v. Gordon, 15 Ohio St., 211, the court say: ‘The evident object of the code is to vest in the court a discretion, where it can be done without surprise or injury, to try the case upon the evidence, outside of the pleadings, and if objection be made, to allow the pleadings to be conformed to the evidence at once and without terms. ’ Where a judgment has been rendered, and there has been a variance between the pleading and the proof, but not such as to mislead the opposite party to his prejudice, and where there has been an omission in such case to conform the pleading to the facts proved, it will not be in furtherance of justice, to deprive the plaintiff of the fruits of the trial, by a reversal of the judgment on error.”
In the case at bar the objection did not arise upon an attempt upon the part of the plaintiff below to make such proof as would be authorized under an allegation of this *637 kind, but it arose after the defendants below had themselves first entered into an investigation of this point by the cross-examination of the plaintiff.
I have said this much upon the assumption that this was a material averment; but was the allegation required? It is urged that it is required by rules laid down in Wood on Master and.Servant, quoted by Judge Minshall, and receiving the endorsement of the supreme court, as it is contended, in the case of Coal & Car Co. v. Norman, 49 Ohio St. 598. I read a paragraph in the opinion of Judge Minshall, that is relied upon, appearing at page 607 of the report:
“In Wood on the Law of Master and Servant, sec. 414,it is said: ‘The servant, in order to recover for defects in the appliances of the business, is called on to establish three propositions: 1. That the appliance was defective. 2. That the master had notice thereof, or knowledge, or ought to have had. 3. That the servant did not know of the defect, and had not equal means of knowing with the master. ’ ”
Judge Minshall proceeds to say:
“It is elementary in the law of pleading that, whatever a party is required to prove in order to make out his claim, must be averred.”
We do not think that this general statement of what is ordinarily required to be established upon the part of the plaintiff applies to all cases where the plaintiff may have been injured by defects in machinery, and we are of the opinion that it was not intended to be so understood by the learned judge who announced the opinion. Indeed, we think it is quite apparent from that case, and from other remarks in the opinion, that the court did not mean to have it understood that in a case like that before the court, it devolves upon the servant to allege or establish that he had not equal means of knowing with his master of the defect which resulted in the injury to him. In that case the defects in the building or structure about which the plaintiff was *638 employed, were open and apparent, and the petition did not contain an allegation that those defects were not known to the plaintiff. That was the fault of the petition in that case. And the court held that a general averment in the petition that the injury occurred without fault on the plaintiff’s part, was not sufficient,and that an averment that he had no knowledge of the defect was required. It is not averred in that case (as in this), that the plaintiff had knowledge of the defect, and notified the master of it, and called upon him to make repair or cure the defect, and then went to work, relying upon the promise that it would be repaired, or relying upon the statement that it had been repaired. In the last paragraph of the opinion Judge Minshall used this language:
“The precise point presented in this case, as to the sufficiency of a petition in an action by a servant against the master for an injury caused by negligence, has not heretofore been determined by this court. But in other states, where it has arisen, it has generally been held, that want of knowledge of the efficient cause of the injury,or facts excusing such knowledge, must be averred in the complaint. ’ ’
But it is held in Street R. R. Co. v. Nollheiuser, 40 Ohio St., 376, that:
“In an action for an injury alleged to have been caused by the negligence of the defendant, it is not necessary to allege in the petition that the injury was caused without the fault or negligence of the plaintiff, unless the other averments necessary to state a cause of action suggest the inference that the plaintiff may have been guilty of contributory negligence.’’
Even where a servant has actual knowledge of the defect, he may, under certain conditions, proceed with his work, and if injury results, recover from the master. The syllabus of this case states what was decided by the court, and all that the court probably could have passed upon in the case:
“In an action by a servant against his master for an in *639 jury resulting from the negligence of the latter in furnishing appliances, or in the caring for the premises where the work is to be done, the plaintiff must aver want of knowledge on his part of the defects causing the injury; or, that, having such knowledge, he informed the master, and continued in his employment upon a promise, express or implied, to remedy the defects; an averment that the injury occurred without fault on his part is not sufficient.”
It is not intimated there that in any case, especially not in .a case like the one at bar, an averment in the petition that the servant did not have equal means of knowing the defect with the master, would be required. A servant is not required in all cases to allege, or to prove even, want o'f knowledge of defects, much less want of means of obtaining knowledge, as, for instance, where he calls the attention of the master to the defect, and the master promises to remedy the defect speedily, and directs his servant to proceed with his work. If he proceeds under such circumstances, even with knowledge - of the defect, he may hold the master responsible for injuries resulting from the defect. That is decided in Manufacturing Co. v. Morrisey, 40 Ohio St., 148 — a case which went up from this county — ■ the syllabus of which reads as follows:
“M,, while using a machine in his capacity of workman for a manufacturing company, acquired a knowledge of its defects and consequent unsafe condition. He complained of its condition to the foreman, under whose orders he was working, and whose duty it was to see that the machinery was kept in good order and repair. The foreman promised him to remedy said defects, and directed him. to go to work on the machine. The workman thereupon remained in the service of the company, and continued to use the machine, and in so doing was injured through its said defects before any steps were taken to remedy the same. Held. That the workman’s knowledge of the defects in the machnie was not, under the circumstances and as matter of law, conclusive of contributory negligence on his part; but it was a fact in the case to be taken into consideration by the jury, *640 with all the other facts and circumstances, in determining the question, whether the workman’s own negligence contributed to the accident by which he was injured.”
Obviously it would have been absurd, in a case like that, to have averred that the plaintiff did not have equal means with the defendant of obtaining knowledge of the alleged defect. In this case the servant admits his knowledge of the defect before the foreman promised to repair the machine; but avers that he did not have knowledge of the defect after the foreman promised to repair it and. declared that he had repaired it; and says that he again went to work under the direction of the foreman, and relying on his statement that he had repaired it; and that he, plaintiff, was without fault in the pi’emises.
Was the further averment necessary that he did not then have equal means with the defendants of knowing of the defect? We think that the facts pleaded show an excuse for not making such examination or tests of the machinery, as he might have made, even with as much ease and facility, and with the same results as to discovery of the defect not having been remedied, as if made by the master.
Of course, he could not disregard apparent defects, but after this assurance from the foreman he was not bound to discredit the statements of the foreman and investigate on his own account to discover whether the foreman had stated the truth. If it had appeared in evidence that he might have discovered this defect as readily as his employer might have discovered it, that would not have affected his right to recover, unless, as I have said, the defect was obvious, apparent; in which case he would have been chargeable with knowledge, and his allegations of want of knowledge and that he was without fault, would not have been sustained.
It follows from this that the amendment was not required, and no prejudice could have resulted from its allow *641 anee after verdict; and that the ruling of the court on the motion to take the case from the jury was right.
This brings us to a consideration of exceptions one, two, and three inclusive at page 16 of the bill of exceptions. In the cross-examination of the plaintiff below the following questions were asked and answers given:
“Q. If they were not in contact creating the friction, this thing, or roller, could not run, could it? A. If they were not tegether they could not.
“Q. So that, no matter how this lever stood, if you should cast your eyes, down, and see these wheels, couldn’t you tell whether they were in contact or not? A. Yes: if you got down far enough.
“Q. If they were not in contact, and were making no friction, this could not revolve? A. Couldn’t revolve: no, sir.
“Q. You knew on that day that by using this lever above your hand, and throwing the belts off the machinery, that it could stop the entire machinery ? A. I did: yes, sir. ’ ’
A model of the machine was in court, and it appeared, from some of these questions and answers that counsel and witness were referring to that model.
“Q. You knew that by doing that there would be no . danger of any kind in picking shavings from these depressions, didn’t you ? A. Yes, sir.”
It will be observed that these questions'and answers that I have just read refer to another applicance which is described by witnesses, whereby the whole machinery might have been stopped. Then this question is asked:
“Q. Will you tell the jury what other and different knowledge Barbour & Starr had, or their foreman had, than that?”
This does not appear to us to refer to the alleged defect in the .machinery. That was objected to, and the objection sustained, and the defendants excepted. • The record then says:
*642 “The court stated to counsel for defendants that they might offer evidence of any facts tedding to show that the plaintiff had equal means of knowledge of the defects with the defendants.”
Then the examination proceeds:
“Q. You had the same means of knowing of the nature and character of the machine that Barbour & Starr had, or their foreman? A. No, sir.
“Q. Why didn’t you have? A. Because I was not around that day that I told him to look at it and see what was the matter. He says he would fix it.
“Q. You knew that the roller was operated by this friction? A. Certainly.
“Q. You knew this lever above your head would stop the entire machinery? A. Yes, sir.
“Q. You knew the purposes for which this was used? A. Yes sir.
“Q, Did Barbour & Starr have any other means of knowing of anything else than that, that you know of? A. Not that I know of.
“Q. Then you had the same means of knowing the nature and character of this machine that Barbour & Starr or their foreman had, didn’t you? (Objected to; sustained; defendants excepted.)
Mr. Seney: “I shall insist that he had equal means of knowing.
The Court: “It is a conclusion, I think. He can state any facts, and Barbour and Starr can state any facts they knew. It is for the jury to Bay: it is a conclusion.
“Q. You have the same means of knowing that Barbour & Starr had, or their foreman, on that day that you got hurt, as to whether the machine was defective or not? (Objected to; sustained; defendants excepted.)”
It appears that this objection was sustained by the court upon the ground, as stated by the court touching a preceding question, that it called for a conclusion upon the part of the witness. It seems so to us, that it calls for a comparison upon the part of the witness of his means of knowledge with the means of knowledge possessed by the em *643 ployer, assuming that he knew what those means were, and a deduction upon his part from that, and a conclusion upon that; and we think upon that ground that the objection might well have been sustained to this form of inquiry. We are further of the opinion, from the reasons already stated, that this was not material; that even if an answer most favorable to the plaintiff in error had been given by the witness, viz: if he had answered “yes”: for the reasons stated in the petition and appearing by the evidence, that is because he had not only had the means of knowledge but actual knowledge of the defect before that, and had informed the foreman of it, and the foreman had informed him that lie had cured the defect, and that he was thereupon proceeding upon that assurance given to him by the foreman, the mere answer that he knew or. had equal means of knowing of this defect would not have been effectual to vitiate his right of recovery. (
An alleged error insisted upon strenuously appears in exceptions Nos. five to thirteen inclusive, which relate to the admission of testimony as to the condition of the machine at a time shortly prior to the time the injury occurred to the plaintiff below. We see no error in the admission of this evidence, since it devolved upon the plaintiff to show,as a part of his case, that the machine was defective at the time he gave notice to the foreman that it was defective. He would have fallen short in his proofs if he had simply shown that he gave notice to the foreman that the machinery was defective, and that the foreman promised to repair the machine, and stated to him that he had repaired it, and that he thereupon proceeded to use it. It devolved upon him to show that the machinery was defective at the time he so notified the foreman, and this testimony tended directly to show that fact. It • was contended in argument *644 upon the part of plaintiffs in error that this was immaterial and prejudicial, but we are of the opinion that it was competent
It was also competent upon another ground, (as stated in the case of Brewing Co. v. Bauer, 50 Ohio St., 560), namely, as tending to show, independently of the information given by the servant to the foreman, that the master had knowledge or ought to have had knowledge of the defect in the machine. It was necessary to show that the master had knowledge, either by the information given to the servant or otherwise, of the defect, as well as to show the promise to repair it.
Exceptions fifteen to twenty-four inclusive relate to testimony admitted as to the defective condition of this machine long after the time of the injury. It is very clear that this would not have been admissible in chief. The question is, was it admissible in this case fairly, in rebuttal of anything that had been admitted or had been attempted to be shown on the part of the defendants below? It appears that the case had been partly tried once before, and that on that occasion the jury had viewed the machine. At the time of this lastjtrial the jury, before the taking of testimony was entered upon, went to the factory and viewed the machine, and it appears that at that time the machine was in perfect working order, and that there was no such defect in the machinéis that alleged by the plaintiff and testified 'to by him and his witnesses. When the defendants entered upon their defense, Frank J. Lehman, the foreman, was called as a witness^for the defendants, and in the course of his direct examination by counsel for plaintiff in error, at page 47 of the^bill of exceptions, this appears:
“Q. From February, ’92, .to October, ’93, the date at which Mr. Miles was injured, state to the jury what repairs, if any, were made by you or the defendants, to your knowledge, upon this machine? A. Well, there was no repairs made on the machine.
*645 “Q. Were there repairs made upon th3 machine at any time? A. There were no repairs made to that machine until the fall of 1895.”
Taking it to a date long after the date of the alleged injury.
“Q. Do you remember during those times these other witnesses, Mr. Heinecke and Mr. Roscoe — did they call upon you to make repairs upon the machine? A. There was no repairs made on the machine at no times.
The Court: “Q, The question is whether either of these witnesses asked you to make repairb — told you that the machine was out of order? A. No; there was no repairs made.
Mr. Seney: “Q. How was this lever on yesterday when the jury were there and saw the machine, in comparison to the machine when it was being operated by Mr. Miles? A. Very same shape.
“Q. Tell the jury whether or not this lever, in moving to the right or to the left, or placing it in the center, required any more exertion on yesterday than it did when Mr. Miles was operating the machine? A. No, sir.”
As I have said, it appears that when the jury examined the machine it was in perfect, working order. The witness upon behalf of the defendants proceeded to state to the jury in answer to interrogatories directed to that point by defendants’ counsel, that the machine at the time the jury viewed it was in precisely the same condition as when the plaintiff was injured, and that no repairs had been made upon the machine in the meantime. He. does state that some sort of repair was made in the fall of 1895. He explains that further in his testimony by saying that those repairs consisted in an overhauling of the machine, and did not relate to or affect the particular alleged defect in the machine which resulted in the injury to the plaintiff,
We think that this testimony, brought into the case by the defendants, authorized an inquiry upon the part of the plaintiff by way of rebuttal as to whether or not the ma *646 chine had been in that condition since the time of the injury, and up to the time the jury had viewed it, and whether there bad been repairs made upon the machine in the meantime; and that the plaintiff was authorized to call these other jurors — they are the witnesses called — who had viewed the machine upon the other occasion, to show that at that time the machine was in the condition which the plaintiff alleged it was at the time he received the injury.
Seney, Johnson & Friedman, and Doyle & Lewis, for Plaintiffs in Error.
Charles C. Wilson, and Harvey Scribner, for Defendant in Error.
It is contended that the verdict is not sustained by sufficient evidence, and that the allegations and proofs do not authorize a recovery. After a careful consideration of all the points urged by counsel for the plaintiffs in error, we are of the opinion that the allegations and proofs, even before the amendment which was made after verdict, justified the verdict of the jury.
We find no prejudicial error in’ the record, and the judgment will be affirmed.